IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| WILBY JAMES BRANHAM, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7:19cv00520 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| TIMOTHY TRENT, <u>et</u> <u>al.</u>, | ) | By: Hon. Jackson L. Kiser |
| | ) |     Senior United States District Judge |
| Defendants. | ) | |

    Wilby James Branham, a Virginia inmate proceeding <u>pro se</u>, filed this civil action pursuant to 42 U.S.C. § 1983, alleging that the defendants violated his federal rights by denying him a prayer rug. This matter is before me on defendants' motion for summary judgment. Having considered the record, I will deny defendants' motion for summary judgment and refer this matter to mediation.

I.

    Branham is a Muslim inmate housed at the Lynchburg Adult Detention Center ("LADC"). Branham states that, as part of his religious beliefs, he must pray to Allah while on a prayer rug. In order to do that, Branham requested a prayer rug from officials at LADC and was advised that, pursuant to policy, prayer rugs were not available, but that he could be issued a second towel from the laundry department that he could use as a prayer rug. Branham states that, according to his Islamic religious beliefs, a towel is not an acceptable alternative to a prayer rug because the towel has previously been used by other inmates to dry their various body parts and, thus, is not clean. LADC officials told Branham that a prayer rug is a "security threat," but Branham states that it is the same length, width, and thickness as a towel. In

addition, Branham states that prayer rugs are sold in the commissary at Virginia Department of Corrections ("VDOC") facilities. LADC officials told Branham that prayer rugs are not an approved item to be put on the commissary ordering list at LADC. As relief, Braham wants to be allowed to buy and receive a prayer rug. Branham names Timothy Trent, Administrator of the Blue Ridge Regional Jail Authority ("BRRJA"), which operates the LADC, and Major Raymond Espinoza, Facility Administrator at the LADC, as defendants to the action.

Defendants filed a motion for summary judgment, arguing that Branham has not established that the prayer rug policy substantially burdened his religious rights, that the policy is reasonably related to the legitimate interest in maintaining institutional security, and that the defendants are entitled to qualified immunity.

## II.

Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In order to preclude summary judgment, the dispute about a material fact must be "'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.; see also JKC Holding Co. v. Washington Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001). If, however, the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 250. In considering a motion for summary judgment under Rule 56, a court must view

the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. See, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986); Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994).

### III.

Defendants argue that Branham has not demonstrated that BRRJA's prayer rug policy, which is in effect at LADC, substantially burdens his religious exercise and that, nevertheless, the policy is reasonably related to a legitimate penological interest. For the following reasons, I will deny defendants' motion for summary judgment on those bases.

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." Although incarcerated, a prisoner still "retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Pell v. Procunier, 417 U.S. 822 (1974). To state a viable claim under the First Amendment, a plaintiff must demonstrate that the defendant prison official's actions or policies place a substantial burden on his free exercise of his sincere religious belief. Thomas v. Review Bd. of Ind. Emp't Sec. Div., 450 U.S. 707, 718 (1981). A court must decide the threshold question of whether a plaintiff sincerely held the avowed belief and whether the belief is, in a plaintiff's own scheme of things, religious. United States v. Seeger, 380 U.S. 163, 185 (1965). Only a personal practice that is both sincerely held and rooted in religious belief is protected. Wisconsin v. Yoder, 406 U.S. 205, 215-16 (1972). In this case, defendants do not dispute that Branham's religious belief is sincere. Accordingly, I will assume, without deciding, that it is.

A substantial burden on religious exercise occurs when a government, through act or omission, "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs." Lovelace, 472 F.3d at 187 (quoting Thomas, 450 U.S. at 718). The plaintiff bears the initial burden of establishing that the government's actions substantially burdened his exercise of religion. See, e.g., Krieger v. Brown, 496 F. App'x 322, 324 (4th Cir. 2012). In conducting the substantial burden inquiry, the plaintiff "is not required . . . to prove that the exercise at issue is required by or essential to his religion." Id. at 325 (citing Cutter v. Wilkinson, 544 U.S. 709, 725 n.13 (2005)). Nevertheless, "at a minimum the substantial burden test requires that a . . . plaintiff demonstrate that the government's denial of a particular religious . . . observance was more than an inconvenience to one's religious practice." Smith v. Allen, 502 F.3d 1255, 1278 (11th Cir. 2007). No substantial burden occurs if the government action merely makes the "religious exercise more expensive or difficult," but fails to pressure the adherent to violate his or her religious beliefs or abandon one of the precepts of his religion. Living Water Church of God v. Charter Twp. of Meridian, 258 F. App'x 729, 739 (6th Cir. 2007). In his verified complaint and attachments thereto, Branham has established that he needs a prayer rug to pray to Allah; that the policy in effect at LADC prohibits him from obtaining a prayer rug; and that pursuant to his beliefs, a towel previously used by other inmates, even if subsequently laundered, is not an acceptable alternative for him to use during his prayers because it is "unclean." Based on this, I conclude that Branham has established that the policy imposes a substantial burden on his religious exercise.

If an inmate establishes a substantial burden on his sincerely held religious belief, the next inquiry is whether the prison regulation is reasonably related to a legitimate penological interest. Turner, 482 U.S. at 89. Whether a regulation is reasonably related depends on:

> (1) [W]hether there is a "valid, rational connection" between the prison regulation or action and the interest asserted by the government, or whether this interest is "so remote as to render the policy arbitrary or irrational"; (2) whether "alternative means of exercising the right … remain open to prison inmates," an inquiry that asks broadly whether inmates were deprived of all forms of religious exercise or whether they were able to participate in other observances of their faith; (3) what impact the desired accommodation would have on security staff, inmates, and the allocation of prison resources; and (4) whether there exist any "obvious, easy alternatives" to the challenged regulation or action, which may suggest that it is "not reasonable, but is [instead] an exaggerated response to prison concerns.

Lovelace, 472 F.3d at 200 (citing Turner v. Safley, 482 U.S. 78, 89-92 (1987)). In weighing these factors, the court must "respect the determinations of prison officials." United States v. Stotts, 925 F.2d 83, 86 (4th Cir. 1991). The prisoner carries the burden of proof under the Turner analysis to disprove the validity of the prison regulation at issue. Overton v. Bazzetta, 539 U.S. 126, 132 (2003).

Defendants aver that the BRRJA does not permit inmates to have prayer rugs because they can be used to conceal contraband. Instead, inmates at LADC and other BRRJA facilities may request a second towel that they may use for prayers. The inmates keep the extra towel in their cells and the towel is exchanged weekly for laundry. Defendants argue that the current policy allows them to reduce contraband at low cost, while still "providing Muslim inmates the opportunity to use an acceptable substitute for the prayer rug." They also argue that if prayer rugs were allowed in their facilities, they would need "an increased officer presence to

monitor the prayer rugs and inspect the jails for contraband, which would significantly burden the BRRJA's financial and human resources." Finally, defendants claim that they are "unaware of any readily available alternative that would similarly promote the BRRJA's goal of reducing contraband at low cost." In his verified complaint, Branham states that the prayer rug is the same length, width, and thickness as the towels provided by LADC. He also states that VDOC facilities make prayer rugs available for inmates to purchase from the commissary. Defendants do not provide any evidence to controvert Branham's claim that the prayer rugs and towels are the same size and thickness. And there is no dispute that the towel, like the prayer rug, would always be kept in Branham's cell. It is unclear to me how a prayer rug that is the same size and thickness as the provided towels would increase the risk of contraband or create the need for an increased officer presence to monitor contraband in the prayer rugs, but not in the extra towels. Accordingly, based on the evidence before me, I cannot conclude that the policy is reasonably related to a legitimate penological interest, and thus, I will deny defendants' motion for summary judgment on that basis.

**IV.**

Defendants also argue that they are entitled to qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). However, the "defense of [qualified immunity] is not available [in] . . . § 1983 cases against individuals where injunctive relief is sought." Id. at 243; see Williams v. Ozmint, 716 F.3d 801, 808 (4th Cir. 2013) ("qualified

- 6 -

immunity has no bearing [] on claims for prospective court action such as injunctive relief") (citing Rowley v. McMillan, 502 F.2d 1326, 1331 (4th Cir. 1974); Sudler v. City of New York, 689 F.3d 159, 177 (2d Cir. 2012)). Inasmuch as Branham seeks only injunctive relief, I cannot find that defendants are entitled to qualified immunity and, therefore, will deny their motion on that basis.

## V.

For the reasons stated, I will deny defendants' motion for summary judgment. Further, I conclude that this action appears suitable to mediation and, thus, will refer the matter to United States Magistrate Judge Robert S. Ballou for such mediation.

**ENTERED** this 3rd day of August, 2020.

    /s/ Jackson L. Kiser
SENIOR UNITED STATES DISTRICT JUDGE